May it please the court, I'm Ryan Cobb and I'm here to argue on behalf of Appellant Michael Seals. As outlined in our brief, we have two principal arguments. The first being that the medical expert's testimony was improperly admitted and Dr. Sfacchiano should never have been allowed to testify. Secondly, the defense counsel's repeated references to Mr. Seals'  constituted plain air. I'd like to focus my time with you on the second argument as I believe that merits the most attention. The defense counsel's questioning amounted to more or less a retrial of Mr. Seals' criminal charges. As this court has stated in Simpson v. Thomas previously, criminal plaintiffs have a very difficult time in presenting their arguments and have extreme credibility issues. When district courts allow prejudicial test or questioning such as occurred here to go beyond the scope of the original arguments from the motion limine, Mr. Seals' testimony on the stand was viewed with further skepticism, and because of this, it ultimately became an issue that was unduly prejudicial to Mr. Seals, and he was not able to put on a proper case in chief. At the same time, the defense  convictions. At the pretrial conference, the Court recognized that this was a civil trial regarding excessive force issues and not a criminal trial about Mr. Seals' arrest. The questioning proffered by the defense counsel amounted to more or less a retrial of his criminal convictions by repeated references to the cocaine underlying his arrest and the amount of the cocaine and what he was using the cocaine for. This had nothing to do with the excessive force exerted upon Mr. Seals during his arrest. What's our standard of review for the admission of evidence? Is it plain error in this instance? In this instance, it would be plain error because there was no objection by the plaintiff's counsel during the initial questioning. But because of the higher standard that Mr. Seals' testimony was dealt with against the credibility issues, this doesn't ultimately rise to the level of plain error. What do you make of the possibility, though, that since part of the issue in this trial was whether the officers' actions were reasonable in the sense that they were using the circumstances as part of their qualified immunity defense or their not responsible defense, and wasn't it relevant for them to have the or wasn't it relevant to that for the jury to know what was at issue here, which is the attempt to basically destroy evidence? It was, in effect, that the what Mr. Seals was allegedly trying to do at the time was at issue. But the questions got in, as was referenced by plaintiff's counsel below, they described before she objected to multiple issues that the cocaine was there, that he was trying to swallow the cocaine. And then when defense counsel continued to question him multiple times thereafter is when the error germinated and became substantial enough to require a reversal and remand it to the law. The district court was very cognizant of this fact, and granting the motion to eliminate very strict parameters in that the questioning for impeachment would be limited to whether or not he had a conviction below. In fact, the district court severely emphasized that, held a sidebar previously to the questioning, and then Mr. Seals held the questioning. I'm sorry. I'm trying to keep the timing of what happened in order. And then Mr. Seals was questioned about whether he was convicted in the underlying offense. And when he was convicted, got in, that met the parameters of the motion to eliminate. Defense counsel continued to ask questions about the raw cocaine, 5 grams worth. Then they held Ms. Bauer below, objected as asked and answered, then continued to ask a few questions regarding the cocaine as that objection was overruled, held a sidebar, and the magistrate judge below said that sufficient testimony was given that he had the conviction was in and that was enough to impeach Mr. Seals. About a couple of pages of testimony later, it goes back to whether or not that was admitted for issues of sex offense or using the cocaine to buy for sex. And those questions continued to be brought in throughout Mr. Seals' testimony. And that continued hounding of those questions ultimately resulted in the error that we believe requires reversal. And then moving on to a second issue that we also believe should not have been admitted was Dr. Sfakianos' testimony. And as this Court, I'm sure, is extremely familiar with Daubert, requiring both the reliability and the advancement of the proponent's case. Here, Dr. Sfakianos' testimony was not reliable because he was not sure what underlying incident that Mr. Seals was, which underlying incident of Mr. Seals that he was supposed to be testifying to. And because he was not sure of which incident, the April 2003 in his cell. But didn't the Court ask some questions to clarify that, to distinguish between the incidents and to make sure before the testimony was allowed that the expert did understand the difference between the two? Yes, Your Honor. And we believe that that was a little too late in the day. And even though he held the proper Daubert hearing and to the Court's conviction it was properly done, the ability of the Plaintiff's counsel to properly cross-examine Dr. Sfakianos below was really handcuffed because of the issue that they couldn't quite go after with vigor, the fact that there were multiple civil cases pending. Because if they continued to discuss the issues with the, in front of the jury about Mr. Seals' litigious nature, that would have been unduly prejudicial to him in and of itself. So. Well, I guess it's hard for me to understand the prejudice because the expert ultimately said, notwithstanding all these, that I was under a mistaken impression about these two events, I still think his pain had to do with a congenital condition and not with any of these events. So where is the prejudice from the confusion of the events? I'm not really sure I follow that. The prejudice that we believe occurred there was the fact that there was really an impossibility of bringing an effective cross-examination of the doctor because to show that the doctor's testimony was unreliable to the jury, the Plaintiff's counsel would have had to bring in evidence of the other incidents coming along the side. And that would have been a decision by the attorneys below not to really press the litigious nature of Mr. Seals, thereby further undermining his credibility. And with that, I would like to reserve the remainder of my time. You certainly may do that. MR. JONES. Good morning. I'm Mark Jones. I represent the two officers, Lyle Thomas and John Reinhart. It sounds like counsel has perhaps abandoned the issue about Dr. Sfancheanos, but I will address that briefly.  Your Honor, I got that right, hit it right on the head. There's, in the record, there's questions from Judge Bottas directly to Dr. Sfancheanos when they were going through the Dauber hearing, specifically as to are you sure that you know that these two incidents are different and you're relying on your record review, because you have to remember that Dr. Sfancheanos reviewed 20 years of Mr. Seals' medical and jail records to come up with his opinions. And if I may, on page 161 of the excerpts of record, lines 7 through 12, Judge Bottas asked Dr. Sfancheanos, quote, so as a practical matter, doctor, you understand that there were two alleged incidences and you are clear in your head as to which incident is which and you based your report on those facts. Is that correct? And Dr. Sfancheanos in line 11, I mean line 12, responded, that is accurate, that's correct. And then Judge Bottas ---- And then the cross-examination was permitted after that. That's right. And then there was cross-examination about those two incidents. It's really a non-issue. The two incidents we're talking about are the incident of this arrest, which formed the basis of this case, and about three months later in April, there was a cell extraction where they took Mr. Seals out of his cell, and he claimed that he had a number of injuries from that, including an exacerbation of his shoulder injury. So all it was was another incident that the doctor was looking at, and he wasn't sure initially whether that incident, the cell extraction, was part of this case. And as a matter of fact, it was not part of this case. Mr. Seals filed a separate lawsuit as to that incident. So it's clear that Dr. Sfancheanos, after reviewing these 20 years of records and actually ---- And he's primarily relying on things that long predated this, the reports of shoulder pain and the various tests that were done. That's correct. That's correct. He had a long-standing ---- Arthritic pain and ---- That's correct. He had a long-standing acromion issue with both shoulders. And so that was the testimony. Similar as any medical expert in any case I've ever tried, similar type situation. I think that's a non-issue. The other issue is a little more interesting. I think it is a non-issue as well, though. The fact is that Judge Vadas, from the beginning, and you can see it in the record, he was concerned about Mr. Seals coming into court after being convicted of the possession and transportation of cocaine that arose out of this incident. He was concerned that Mr. Seals would come in, given the fact he had a rather ---- he had a reputation for being a rather loose cannon, let's say. And he was pro se. He was pro se, not at the trial, no. No, no. He had four lawyers at trial from the Latham Watkins firm that were appointed by the court. He was pro se up until I think about maybe six months before trial. So he was fully represented at trial. But Judge Vadas was concerned that Mr. Seals might come in and say, you know what? I didn't have any cocaine. I was railroaded. And you can see that in the transcript on some of the sidebars that I, and as you know, I was the trial attorney for the deputies. And in the record it's clear that we had a number of sidebars, both on and off the record, in which he wanted to make sure that if Mr. Seals came in and said, yes, I was convicted, but I had no cocaine, it was planted or whatever, that I would have the opportunity as counsel for these officers to cross-examine Mr. Seals about that. And that's exactly what happened. He came in and tried to say, oh, I didn't have any cocaine and so forth. His position was these officers stopped me for no reason, used racial epitaphs, and then strangled me into unconsciousness for no reason. Now, the idea, and Judge Vadas clearly recognized the significance of this potential problem, the idea that Mr. Seals couldn't be cross-examined as to the events and circumstances of his arrest, which has nothing to do with this issue of conviction evidence, is absurd. The whole issue in the case was, why did the officers use force? And in using that force, was that force reasonable under the circumstances? The whole reason that they put their hands on Mr. Seals is because he tried to swallow a bag with 5 grams of raw cocaine in it. And for Mr. Seals now to take the position that, well, once we said I was convicted, you can't ask me any questions about whether I had cocaine or not, suffice it to say that I'm not aware of any published case in this circuit or in the State of California, for that matter, that would preclude questioning of a plaintiff in a civil rights case that's based on Fourth Amendment use of excessive force, that would preclude counsel for the officers to question the plaintiff about those circumstances and whether or not he agreed with any of them. The officers testified as to all of these matters, and clearly it was well within the purview of cross-examination to simply ask Mr. Seals whether he did what the officers said that he did. And once he denied that, Judge Votis then allowed some limited questioning. The only reason there were additional follow-up questions about the cocaine use was because Mr. Seals continually denied having it every time it came up. So there's always one or two follow-ups. You know, isn't it true that you told the officers that you exchanged it for sex or something? You know, whatever was in the police report, there were a few questions like that. But as you see from the record, we spent a lot of time at the sidebar with Judge Votis because he really, I think, bent over backwards to make sure that Seals got a fair trial, notwithstanding the fact that he was, in effect, trying to collaterally attack his conviction. And in doing that, it was a fine line. I think that the thing that's really telling, and I don't know if – I think we cited this in our brief, but on page 20 – yes. On page 25 of our brief, during one of these sidebars, I had said to the Court, and this is on page 25, I had said to the Court, the door is open on this issue. What page of the record are you, McCann? Ah. It's the record page 35. Okay. It's in page 34 and 35 where we're talking about the sidebar. And when I mentioned I thought the door was open about this, Judge Votis looked right at Mr. Seals' counsel and said, you know, I warned you guys, meaning Mr. Seals' attorneys, I warned you guys at the motions in limine that this was going to get ugly if your client denied having drugs. Judge Votis clearly understood the parameters of his ruling on the motion in limine on the admissibility of the one conviction. He clearly understood that it was Seals' testimony. It wasn't questioning by defense counsel that would open the door. It wasn't me asking him if he had cocaine. What opened the door was Mr. Seals' testimony that he did not possess cocaine. And it couldn't be more clear than in Judge Votis' ruling – I'm sorry, that last reference was on page 35, lines 24 and 25. If I'm reading my own brief correctly. But on his order denying the motion for the new trial, and this is in the record at page 41, lines 8 through 20, and in particular part, the most pertinent section, Judge Votis indicates, quote, During trial, plaintiff opened the door to further questioning by defense counsel regarding cocaine because plaintiff denied possession of cocaine during the underlying arrest. It wasn't a question by me that opened the door. The court went on to say, quote, The court held multiple sidebars outside the jury's presence to discuss the issue and warned plaintiff and his counsel that plaintiff's testimony would open the door to questioning on that subject. Everybody in the courtroom understood what would open the door. And that's the reason, I think, that his attorneys didn't object when I initially asked the questions about possessing cocaine. It wasn't because they were sitting on their hands. It's because they understood, like everybody else, that Mr. Seals had a choice. He could say, yes, I did. I had the cocaine, and they beat me up anyway. They strangled me. They didn't need to. He could have still prevailed in an excessive force case had he established excessive force. But he chose to go down the other path, which then opened the door to some limited additional questioning about the cocaine. I will say that the bottom line on the case, too, and this is addressed also in Judge Vadas' new trial, denial of the new trial motion, was that Mr. Seals did get a fair trial. And the fact is, is that, as Judge Vadas said, the verdict was not against the clear weight of the evidence. There was a ton of evidence, and it wasn't just, I mean, everybody knew what was going on with Mr. Seals. I don't know if it's in the record or not. But the court, I'm sure, is aware of these kinds of cases where he was incarcerated in Pelican Bay at the time. There were six California Department of Corrections officers in the courtroom. And one guy stood behind him the whole time. I mean, the jury, it wasn't like there was a question as to whether or not this guy was convicted. I never asked any questions because what was covered in the motion eliminate, didn't ask questions about are you still incarcerated because that was out of limits. How long is your sentence? Anything having to do with his conviction, that was out. And none of those questions were asked. So, again, I think it's, the record really is clear as to what Judge Vadas meant by his motion eliminate order. And as the case progressed, like in almost every case I think that I've tried, and as Judge Vadas indicated, trials are living animals. They're living things. And just because there's a pretrial order made doesn't mean that because of something that happens at trial, it doesn't, it doesn't move into a different area where the judge has the authority to make additional evidentiary, particularly evidentiary rulings to make sure that the process is fair to everybody. And that's, that's what Judge Vadas did. Unless the Court has some questions, I think I would submit it on that. I don't believe that we do. Thank you. Thank you. Mr. Crabb, you have some rebuttal time, though, if you'd like to use it. Your Honor, I would briefly like to note that the counsel, can I make a comment? I have a temporary hearing difficulty. I could hear the government very clearly. I think they were speaking directly to the microphone. So if you make a point of speaking to the microphone, I think I'll hear you. Yes, Your Honor. I apologize for that. You have to make the effort, but thank you. Okay. Just briefly, the conviction, the fact that Mr. Shields was convicted was well-known between the opening statements, his direct testimony, and it was not until the cross-examination that the error occurred because there was too much delving into the underlying arrest. But there's a difference between saying I was convicted. Plenty of people say I was convicted, but it was wrong from the start. I didn't do it. Of course I was convicted, but the system is lousy. And if the question is what is the amount of force that can be used for somebody who is swallowing a baggie of cocaine and the person says I didn't have one, that seems like a different question than just whether the person was convicted. Yes. But in this case it is different because the parameters of the issue were that he was specifically limited to only arguing whether the conviction was occurred. Nothing else would be allowed for impeachment purposes. The magistrate judge later allowed this testimony to go in, and because of that we believe that there was error had occurred. And unless the Court has any further questions. I don't believe that we do. Thank you.  It's helpful to the Court. The case just argued is submitted.
judges: Noonan, Tashima, Graber